THEODORE H. WOOD *vs.* JOSIAH G. GRAVES & another.

Suffolk. Jan. 11, 12. — May 6, 1887. HOLMES & GARDNER, JJ., absent.

An action for false imprisonment will lie for the misuse or abuse of legal process after it has issued, beyond the mere fact of arrest and detention.

In an action by A. against B. for false imprisonment and the abuse of legal process, there was evidence that A. had formerly been the treasurer of a railroad corporation, and, as such, had given a bond with B. as surety; that the corporation brought an action upon the bond against A. and B., for money wrongfully appropriated by A. to his own use in payment of a claim for services, without the approval of the board of directors; that the corporation recovered judgment; that B. procured an indictment to be found against A. for the purpose of compelling him to pay the debt, on which he was arrested and held until he made a settlement. A. offered to show that, at the trial of the action on the bond, the defendants offered the testimony of a majority of the directors who were present at the meeting where his claim was considered, to show that they understood that the claim was to be paid in full, which evidence was excluded; and that, when the case came before the Supreme Court, it was submitted on a brief by B., who acted as counsel; and that in his brief he assumed as a fact the existence of the assent of a majority of the directors. *Held,* that the evidence as to the brief was inadmissible to show that B. knew the fact to be as therein assumed.

TORT, in three counts, against Josiah G. Graves and W. W. Bailey. At the trial in the Superior Court, before *Knowlton,* J., the jury returned a verdict for the plaintiff, in the sum of

$7500; and the defendants alleged exceptions, which appear in the opinion.

*B. Wadleigh & P. E. Tucker*, for the defendants.

*A. W. Boardman*, for the plaintiff.

C. ALLEN, J.  The three counts of the declaration are treated by the counsel for the defendants as being counts respectively for malicious prosecution, for false imprisonment, and for abuse of criminal process ; and the trial appears to have proceeded on that ground.  No question as to the form of the declaration has been raised.  The court correctly ruled, upon the request of the defendants, that, upon the evidence, the plaintiff could not maintain an action for malicious prosecution, the prosecution not having been brought to a termination.  The principal questions arise upon the other requests by the defendants for instructions.

The court declined to rule that, upon the evidence, the plaintiff could not maintain an action for false imprisonment against either of the defendants.  No action would lie for false imprisonment by reason of what was done in pursuance of the warrant of the Governor in the extradition of the plaintiff from Massachusetts to New Hampshire, or of what was done in pursuance of any lawful precept issued upon the indictment in New Hampshire ; but if acts were done in excess of what was authorized, and if the process of the law was abused, the remedy might be by an action for false imprisonment.  The court therefore properly declined to adopt the language of the defendants' second request, and all the rights of the defendants in respect to this were saved by the course of the instructions in relation to the wrongful use of process already commenced.

There is no doubt that an action lies for the malicious abuse of lawful process, civil or criminal.  It is to be assumed, in such a case, that the process was lawfully issued for a just cause, and is valid in form, and that the arrest or other proceeding upon the process was justifiable and proper in its inception.  But the grievance to be redressed arises in consequence of subsequent proceedings.  For example, if after an arrest upon civil or criminal process the person arrested is subjected to unwarrantable insults and indignities, is treated with cruelty, is deprived of proper food, or is otherwise treated with oppression and undue hardship, he has a remedy by an action against the officer, and against

others who may unite with the officer in doing the wrong. It is sometimes said that the protection afforded by the process is lost, and that the officer becomes a trespasser *ab initio*. *Esty* v. *Wilmot*, 15 Gray, 168. *Malcom* v. *Spoor*, 12 Met. 279. This rule, however, is somewhat technical, and is hardly applicable to others than the officer himself. But the principle is general, and is applicable to all kinds of abuses outside of the proper service of lawful process, whether civil or criminal, that for every such wrong there is a remedy, not only against the officer whose duty it is to protect the person under arrest, but also against all others who may unite with him in inflicting the injury. Perhaps the most frequent form of such abuse is by working upon the fears of the person under arrest for the purpose of extorting money or other property, or of compelling him to sign some paper, to give up some claim, or to do some other act, in accordance with the wishes of those who have control of the prosecution. The leading case upon this subject is *Grainger* v. *Hill*, 4 Bing. N. C. 212, where the owner of a vessel was arrested on civil process, and the officer, acting under the directions of the plaintiffs in the suit, used the process to compel the defendant therein to give up his ship's register, to which they had no right. He was held entitled to recover damages, not for maliciously putting the process in force, but for maliciously abusing it, to effect an object not within its proper scope. In *Page* v. *Cushing*, 38 Maine, 523, the same doctrine was held applicable to the abuse of criminal process. *Holley* v. *Mix*, 3 Wend. 350, is to the same effect, and it was held that an action for false imprisonment will lie against an officer and a complainant in a criminal prosecution, where they combine and extort money from a person accused, by operating upon his fears, though the person was in the custody of the officer under a valid warrant, issued upon a charge of felony. The case of *Baldwin* v. *Weed*, 17 Wend. 224, was an action for false imprisonment. The plaintiff had been indicted in New York; he was arrested in Vermont, and carried to New York for trial. The defendant Weed procured the requisition, was present at the arrest, and caused the plaintiff to be put into irons, with the purpose to secure two small debts. The plaintiff executed to Weed a bond for the delivery of property much in excess of the debts. The action for

malicious prosecution failed, but the court (Nelson, C. J.) declared that an action of trespass, assault, and false imprisonment should have been brought, and was the appropriate remedy for the excess of authority and abuse of the process; and intimated to the plaintiff to amend his pleadings accordingly. See also *Carleton* v. *Taylor*, 50 Vt. 220 ; *Mayer* v. *Walter*, 64 Penn. St. 283. On similar grounds an officer becomes responsible in damages for abuse of process, or as trespasser *ab initio* by reason of such abuse, who omits to give an impounded beast reasonable food and water while under his care ; *Adams* v. *Adams*, 13 Pick. 384 ; or who stays too long in a store where he has attached goods ; *Rowley* v. *Rice*, 11 Met. 337 ; *Williams* v. *Powell*, 101 Mass. 467 ; *Davis* v. *Stone*, 120 Mass. 228 ; or who keeps a keeper too long in possession of attached property ; *Cutter* v. *Howe*, 122 Mass. 541 ; or who places in a dwelling-house an unfit person as keeper, against the owner's remonstrance. *Malcom* v. *Spoor*, *ubi supra.*

In various other cases, where it has been said that the only remedy was by an action for malicious prosecution, the whole grievance complained of consisted in the original institution of the process, and no abuse in the mere manner of serving it was alleged. Such cases are *Mullen* v. *Brown*, 138 Mass. 114 ; *Hamilburgh* v. *Shepard*, 119 Mass. 30 ; *Coupal* v. *Ward*, 106 Mass. 289 ; and *O'Brien* v. *Barry*, 106 Mass. 300. The case of *Hackett* v. *King*, 6 Allen, 58, was trover for the conversion of property which the plaintiff conveyed to the defendant under alleged duress. In *Taylor* v. *Jaques*, 106 Mass. 291, the question arose in another form, the action being on a promissory note, in defence to which the defendant alleged that his signature was procured by duress.

In examining the instructions of the learned judge to the jury in the present case, no error is found. He made a careful discrimination between the remedy for a malicious prosecution and that for a malicious abuse of process in the manner of executing it. He instructed them explicitly that no damages should be given for anything which occurred before the process was used at all by the officer, but only for what occurred after it began to be used upon the plaintiff, and after it began to be wrongfully used for the purpose of collecting the defendants' debt, and so used with

their participation, by their direction, or under their influence. He told them also, in effect, that it must be proved that the defendants, by influence which they were able to exert, or otherwise, actively used the prosecution as a means of getting their debt; and this he afterwards explained and enforced by saying that it must be an influence which they brought to bear in some way upon those in charge of the proceedings. Under these instructions, the jury could not properly hold the defendants responsible for merely setting the criminal law in motion, and arresting the plaintiff, and holding him in custody until his discharge; but only for some distinct act or omission, which amounted to a misuse or abuse of the process after it had issued, some indignity or oppression beyond the mere fact of arrest and detention, some separate pressure to compel him to make the settlement.

The defendants contend that there was not sufficient evidence to warrant the jury in finding any such abuse of process. But it is unnecessary for us to go into a consideration of this question, since upon another ground the case will have to go to a new trial, and the evidence upon the new trial may not be the same. The magnitude of the verdict certainly leads to the fear that the jury may have failed to appreciate the legal grounds upon which the plaintiff's claim to damages must rest; but the question whether the damages are excessive is not before us, and no question is before us as to the legal measure of damages.

In the admission of those expressions in Mr. Bailey's brief which related to the assent of a majority of the board of directors to the payment of $4261 to the plaintiff, as competent evidence bearing upon the question of misuse of legal process, we think an error was made by which the defendants were prejudiced. The question arose in this way. There was an action by the Peterborough Railroad Company against the plaintiff, who had been its treasurer, and the sureties upon his bond, who were the defendants in the present case, to recover for money alleged to have been wrongfully appropriated by the plaintiff to his own use, in payment of a claim for services, without the approval of the board of directors. The case was tried before a referee, who in his report set forth that the defendants " proposed to offer the testimony of a majority of the directors who were

present at the meeting [when the claim was partly considered], to show that they understood at that time that the bill was to be paid in full as presented; but the referee ruled that the proposed evidence would be incompetent," &c.   The correctness of this ruling was controverted, and the case was argued on briefs before the Supreme Court of New Hampshire, the defendant Bailey submitting a brief in which he assumed as a fact the existence of the assent of a majority of the board of directors, according to the offer of proof before the referee.   This part of the brief was admitted in the present action against the defendants as evidence that Bailey knew the fact to be as there assumed, and thus as evidence of the groundlessness of the prosecution against the plaintiff, and thus as bearing somewhat on the question whether the defendants did or did not abuse the prosecution after it had been instituted.   But we think the statements of the brief had no just tendency to show any personal knowledge, on Mr. Bailey's part, of the fact in question. In the trial of a cause, the offers of counsel to prove certain facts do not usually imply that they have any personal knowledge thereof.   Indeed, the facts may be in dispute, and counsel may know that they are in dispute, and nevertheless properly offer evidence to prove them.   It is as if the counsel should say, " I wish to offer evidence tending to prove so and so.   This will probably be controverted by the other side.   I wish to offer my evidence, and to go to the jury upon the point."   But the court says, " No.   Even if you succeed in proving what you. claim to be the facts, it will not help you.   The evidence, if true, is immaterial."   There is in such case, of course, no finding of the fact.   It remains a controverted question.   But on the argument of the law question, whether the ruling of the court was right or not, the counsel and the court must assume, for the purpose of the discussion, that the fact existed, as offered to be proved.   The statements in the brief of Mr. Bailey amounted to no more than this.   They did not import any personal knowledge, on his part, of the facts.   By assuming them to be true, he made no admission which justly could be put in evidence against him afterwards, as affecting him personally.   For this reason only, a new trial must be had.             *Exceptions sustained.*